UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 5:20-cv-00270-SP <br><br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On February 11, 2020, plaintiff Rosa S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") properly considered the opinion of a treating physician; and (2) whether the ALJ properly considered plaintiff's testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-12; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-15.

Having carefully reviewed the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the treating physician and plaintiff's testimony. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was 31 years old on her alleged disability onset date, and is a high school graduate with a medical assistant certification. AR at 44-45. Plaintiff has past relevant work as a clerk and medical assistant. AR at 51.

On June 18, 2010, plaintiff filed applications for a period of disability, DIB, and SSI. AR at 101. The applications were denied initially on October 6, 2010. *Id*. Plaintiff filed a second set of applications on June 22, 2011, which were denied after a hearing on January 28, 2013. *Id.*

On August 30, 2013 and September 25, 2013, plaintiff filed a third set of applications for a period of disability, DIB, and SSI, alleging an onset date of August 15, 2009 due to rheumatoid arthritis, lupus, hypertension, depression, and bone pain. AR at 100, 115. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which she filed a request for a hearing. AR at 162-76.

On December 9, 2014, plaintiff appeared and testified at a hearing before the ALJ. AR at 38-56. On January 28, 2015, the ALJ denied plaintiff's claims for benefits. AR at 19-33. Plaintiff filed a timely request for review of the ALJ's

decision, which was denied by the Appeals Council. AR at 1-3. Plaintiff sought review of the decision in this court. On January 31, 2018, this court reversed the Commissioner's decision and remanded the matter for further administrative proceedings. AR at 1220.

The ALJ held the remanded hearing on November 7, 2018. AR at 1120. Plaintiff, represented by counsel, appeared and testified at the hearing. AR at 1124-33. The ALJ also heard testimony from Ronald K. Hatakeyama, a vocational expert. AR at 1131-37. The ALJ again denied plaintiff's claim for benefits on April 2, 2019. AR at 1095-1112.

Plaintiff was found to be not disabled in an earlier decision by an ALJ dated January 28, 2013. AR at 1095. Here, the ALJ first determined that plaintiff made a showing of changed circumstance and therefore rebutted the presumption of continuing nondisability. AR at 1096. The ALJ then applied the well-known five-step sequential evaluation process.

The ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 15, 2009, the alleged disability onset date. AR at 1098.

At step two, the ALJ found plaintiff suffered from the following severe impairments: systemic lupus erythematosus; rheumatoid arthritis; and affective disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). AR at 1099.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the

determined she had the RFC to perform light work, with the limitations that she could: lift and carry 20 pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours; and occasionally perform postural activities. AR at 1100-01. The ALJ precluded plaintiff from jobs requiring: exposure to temperature extremes; concentrated exposure to vibration; hazards such as hazardous machinery; and heights. AR at 1101. The ALJ also found plaintiff can handle normal stresses associated with working, but is unable to perform highly stressful jobs, such as those in customer service, or requiring high production quotas, such as rapid assembly. *Id*.

At step four, the ALJ found the plaintiff was capable of performing past relevant work as a general clerk and medical assistant. AR at 1111. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 1112.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 1082-85. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v.*

---

claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

*Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks omitted). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks omitted).

## IV.

## DISCUSSION

**A.    The ALJ Properly Rejected Dr. Le's Opinion**

Plaintiff first argues the ALJ improperly dismissed the opinion of plaintiff's treating physician, Dr. Thang Le.  P. Mem. at 2-10.  Specifically, plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting Dr. Le's opinion. *Id*.  Defendant counters the ALJ provided adequate reasoning for declining to afford controlling weight to Dr. Le's opinion.  Specifically, defendant argues the ALJ found Dr. Le's opinion was not well-supported by his own treatment notes, and the opinion was inconsistent with normal findings from the 2018 consultative examination.  D. Mem. at 3-4.

In deciding whether a claimant has a medically determinable impairment, the

ALJ considers different types of evidence, including medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] The regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of a treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Id.* If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, in rejecting the contradicted opinions of examining physicians. *Lester*, 81 F.3d at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

---

[2] The Social Security Administration issued new regulations effective March 27, 2017. All regulations cited in this decision are those effective for cases filed prior to March 27, 2017.

### 1. **Dr. Thang Le's Findings and Opinion**

Dr. Le, a rheumatologist, treated plaintiff from June 17, 2010 through August 8, 2018. *See* AR at 533-36, 1817-1921. Plaintiff was referred to Dr. Le after complaining of fatigue and pain, and having a positive antinuclear antibody ("ANA") test.[3] *See* AR at 484, 533-36. At the initial consultation, plaintiff reported fatigue the past three years and constant moderate to severe pain and stiffness of the hands, wrists, elbows, shoulders, neck, lower back, hips, knees, and feet the past year. AR at 533. Dr. Le observed plaintiff had tenderness to palpation in the hand joints, wrists, elbows, knees, and ankles, and 12/18 tender points. AR at 535. Based on the initial examination and ANA test, Dr. Le's impression was that plaintiff had polyarthralagia and fatigue, and plaintiff should be evaluated for systemic lupus erythematosus and Sjogren's. *Id.*

Dr. Le continued to treat plaintiff for the next eight years. During that time, plaintiff consistently reported to Dr. Le that she had constant moderate to severe pain and stiffness in the morning. *See, e.g.,* AR at 619, 667, 1165. Plaintiff reported periods of improvement, which appeared to correspond with changes in medication. *See, e.g.,* AR at 649, 912, 1071, 1826. Upon physical examination, Dr. Le observed plaintiff had tenderness to palpation at her fingers, ankle joints, and elbows. *See, e.g.,* AR at 602, 647, 668, 677, 1060. But Dr. Le observed a decrease in tender points, starting with 14/18 in July 2010 and decreasing to 3/18 by October 2013. *See* AR at 677, 919. Treatment notes from 2014 do not indicate any trigger points, but Dr. Le noted plaintiff developed a painful arc of the shoulders. *See* AR at 1060, 1069. Dr. Le also observed muscle weakness on one

---

[3] An ANA test is used to determine whether someone has an autoimmune disorder such as lupus or rheumatoid arthritis. A positive ANA test does not automatically mean the person tested has lupus. *See* http://www.mayoclinic.org/tests-procedures/ana-test/basics/definition/prc-20014566 (last visited 9/27/2021).

occasion. AR at 602.

Dr. Le ordered multiple blood tests during the course of treatment. After reviewing the initial positive ANA test, Dr. Le ordered a lupus panel, which was negative. AR at 751. After a subsequent December 2010 ANA test was positive, Dr. Le ordered another lupus panel, which again was negative. *See* AR at 662, 741, 744. A June 2013 ANA test was negative. AR at 598. Plaintiff's blood tests, however, showed an elevated C-reactive protein. *See, e.g.,* AR at 929, 931, 933. Based on the tests, plaintiff's complaints, and clinical findings, Dr. Le diagnosed plaintiff with seronegative rheumatoid arthritis and fibromyalgia.[4] *See* AR at 603, 606.

Dr. Le treated plaintiff with various medications. In 2010, Dr. Le treated plaintiff with prednisone and hydroxychloroquine. *See* AR at 669, 673. When those medications did not appear to have a significant effect on plaintiff's symptoms, Dr. Le switched to Lyrica, which helped ease the symptoms, but her health plan declined to authorize it. *See* AR at 658, 661, 664, 669. Dr. Le then prescribed Gabapentin, which proved ineffective. *See* AR at 655. In May 2011, Dr. Le initiated a trial of methotrexate and Percocet, which caused a significant reduction in pain and stiffness. *See* AR at 652, 657. Due to side effects, however, plaintiff was taken off of methotrexate in May 2012. *See* AR at 634, 639, 642. By April 2013, plaintiff reported the Percocet was no longer effective so Dr. Le added Humira to the treatment regimen. *See id*. at 619, 621. Dr. Le discontinued the Humira four months later due to the lack of improvement and side effect of skin lesions. *See id*. at 606. Dr. Le then treated plaintiff with Enbrel for six months before switching to Remicade. *See id*. at 918, 1061.

---

[4] Seronegative rheumatoid arthritis is the diagnosis of rheumatoid arthritis without the presence of certain antibodies in the patient's blood. *See* https://www.rheumatoidarthritis.org/ra/types/seronegative/ (last visited 9/27/2021).

On December 8, 2014, Dr. Le completed a Medical Source Statement of Ability to Do Work Related Activities ("2014 Opinion"). AR at 1077-79. Dr. Lee diagnosed plaintiff with rheumatoid arthritis based on plaintiff's reported symptoms and the clinical findings, including the positive ANA tests and elevated C-reactive protein. AR at 1077. Dr. Le opined plaintiff: could sit for only 20 minutes at a time for a total of four hours; could stand for ten minutes at a time; could stand or walk for less than a total of two hours in a normal workday; and required the option to shift positions at will from sitting, standing, and walking. AR at 1077-78. Dr. Le also opined plaintiff required a job that allowed her to take an unscheduled break every 30 minutes; could occasionally lift less than ten pounds; had various postural, manipulative, and environmental limitations; and would be off task for at least 25 percent of the time. AR at 1078-79.

From July 2015 through January 2016 plaintiff received Orencia treatment, which provided some moderate pain relief. AR at 1518, 1705. Due to elevated C-reactive protein, Dr. Le advised that the treatment change to biologic therapy. AR at 1502. Plaintiff received several injections to help with joint pain, including Rituxan and Toradol. AR at 1696, 1699. Rituxan provided moderate reduction in the pain and stiffness of joints. AR at 1491-94. Throughout the treatment, plaintiff continued taking Percocet, which provided good pain relief. AR at 1494. Due to increased pain and stiffness in the neck, upper back, and shoulders, Dr Le. started plaintiff on Actemra in October 2016. AR at 1618. During this time, plaintiff continued to report overall morning stiffness. AR at 1503, 1506, 1509, 1515, 1518.

On October 1, 2018, Dr. Le completed another Medical Source Statement of Activity to do Work Related Activities ("2018 Opinion"). AR at 2802-04. Dr. Le again diagnosed plaintiff with rheumatoid arthritis. AR at 2802. Dr. Le opined plaintiff: could sit for 30 minutes before needing to get up; could stand for 15

minutes at a time; could sit and stand or walk for less than a total of two hours in a normal workday; and required the option to shift positions at will from sitting, standing, and walking. AR at 2802-03. Dr. Le also opined plaintiff required a job that allowed her to take an unscheduled break every one to two hours; could occasionally lift up to ten pounds; had various postural, manipulative, and environmental limitations; and would be off task at least 25 percent of the time. AR at 2803-04.

### 2. Dr. Herman Schoene's Findings and Opinion

On December 4, 2018, Dr. Herman Schoene, an orthopaedist, conducted a complete orthopaedic evaluation based on a physical examination of the plaintiff. AR at 2805-15. Plaintiff's chief complaint was joint problems, including neck, shoulder, elbow, wrist, hand, upper and lower back, ankle, knee, and hip pain. AR at 2805. Plaintiff described her pain as sharp, indicating it bothers her while sitting, standing, walking, and lifting. *Id*. The physical examination revealed normal station and gait, and normal range of motion of the lower and upper extremities without any evidence of muscle atrophy, spasm, inflamation or tenderness. AR at 2807. Dr. Schoene observed that plaintiff sat comfortably and arose from a chair without difficulty. *Id*. Dr, Schoene diagnosed plaintiff with rheumatoid arthritis by history. AR at 2808. Dr. Schoene opined that plaintiff could lift or carry 20 pounds occasionally and ten pounds frequently, could stand, sit, or walk for six hours, and could frequently engage in postural activities. *Id*.

### 3. The ALJ's Findings

As an initial matter, there is no dispute Dr. Le's status as a treating physician generally would entitle his opinion to more weight than that of a non-treating physician. *Holohan*, 246 F.3d at 1202. The parties also agree that, because Dr. Le's opinion was contradicted, the ALJ had to provide specific and legitimate reasons, supported by substantial evidence, for rejecting it. P. Mem. at 3; D. Mem.

at 3; *Smolen*, 80 F.3d at 1285.  The ALJ gave little weight to Dr. Le's opinion for several reasons: (1) Dr. Le's opinion was inconsistent with his own treatment records; (2) plaintiff's allegations of pain were inconsistent with Dr. Le's treatment records; (3) plaintiff's daily activities were inconsistent with Dr. Le's opinion; and (4) Dr. Le's opinion was inconsistent with the grossly normal findings by the consultative examiner.  The court considers each reason in turn.

### a. Inconsistency Between Dr. Le's Assessment of Plaintiff's Functional Limitations and His Own Treatment Records

The ALJ first determined that Dr. Le's assessment of the severity of plaintiff's functional limitations was inconsistent with his own treatment records. AR at 1110.  Plaintiff argues Dr. Le's opinion is completely supported by the record, and as such, the ALJ improperly dismissed it.  P. Mem. at 2-9.  Defendant counters by citing Dr. Le's records indicating that "[p]laintiff lacked any neurological, proximal weakness," which, defendant argues, contradicts Dr. Le's assessment of plaintiff's "strength limitations."  D. Mem. at 5.  A conflict between treatment notes and a treating physician's opinions may constitute an adequate reason to discredit the physician's opinion.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion).

First, the ALJ reasoned that Dr. Le's treatment records are internally inconsistent.  For example, the ALJ pointed to the inconsistency between Dr. Le's reports, which documented plaintiff's allegations of severe symptoms, and physical examinations conducted on the same day, which did not document any positive objective findings.  AR at 1110; *see* AR at 1674-76, 1684-89, 1693-95, 1699-1704. Given that Dr. Le's findings and course of treatment plainly depended on plaintiff's subjective reporting, this inconsistency is significant.  *Cf. Morgan v.*

*Comm'r,* 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion based on claimant's own complaints may be disregarded if claimant's complaints have been properly discounted).

The ALJ further noted that Dr. Le's physical examinations revealed "no active synovitis or only mild to moderate tenderness to palpation" and "no proximal weakness." AR at 1110; *see e.g.*, AR at 605, 617, 641, 671, 1675-76, 1685-86, 1694-95. These findings are at odds with Dr. Le's 2018 Opinion that plaintiff could only occasionally lift up to ten pounds, and has various postural and manipulative limitations, including being entirely precluded from twisting, stooping, crouching, balancing, and kneeling, and only rarely able to climb stairs, handle, finger, and reach. *See* AR at 2803-04. The incongruity between the severe strength and other limitations opined by Dr. Le and his largely mild or negative examination findings is a specific and legitimate reason supported by substantial evidence to discount Dr. Le's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between [treating physician's] Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting [her] opinion . . . .").

### b. **Inconsistency Between Plaintiff's Allegations and Dr. Le's Treatment Records**

The ALJ next noted inconsistencies between plaintiff's allegations of severe pain and records indicating she was doing better or was experiencing improvement. AR at 1110. The treatment records consistently reflect that plaintiff continued to report severe symptoms, including chronic pain, stiffness, swelling in the joints of her arms and legs, and limited range of motion of the cervical spine. AR at 602, 647, 677, 744, 929, 931, 1060, 1820, 1824, 1832. It is true that the records also document some improvements. For example, in January 2018, plaintiff stated she was "feeling better as compared to the last visit" and reported "less cramping of the

hands and calves." AR at 1846. However, in February 2018, plaintiff stated she "felt poorly this past month." AR at 1842. In March 2018, plaintiff again reported she "felt poorly this past week" and complained of "constant severe pain in her hands, wrists, elbows, and shoulders." AR at 1836. Subsequently, in April 2018, plaintiff reported not feeling well. AR at 1833. In short, occasional findings of improvement are not necessarily inconsistent with plaintiff having marked limitations, and the ALJ provides no evidence to the contrary. *Cf Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (finding, in the context of mental health "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). As such, the ALJ's second reason for disregarding Dr. Le's opinion is neither specific nor supported by substantial evidence.

            c.    **Inconsistency Between Plaintiff's Daily Activities and Dr. Le's Assessment of Plaintiff's Functional Limitations**

The ALJ further noted that Dr. Le's opinion, regarding plaintiff's inability to twist, stoop, crouch, balance or kneel, is inconsistent with the exercise regime she implemented with her daughter. AR at 1110. While such a conflict may justify discounting the treating physician's opinion, it does not apply here. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (reasoning that conflict between treating doctor's opinion and plaintiff's daily activities may serve as a specific and legitimate reason to discount the opinion). The record is silent as to the type of exercise plaintiff engaged in, and neither party clarifies this point. On one occasion, plaintiff reported that she had started a "gym exercise routine every other day with her 18-year-old daughter." AR at 1488. It is unclear, absent additional evidence, how plaintiff's exercise is inconsistent with Dr. Le's opinion. As such, this reason for

rejecting Dr. Le's opinion is not sufficiently specific or supported by substantial evidence.

### d. Inconsistency With Dr. Schoene's Evaluation

The ALJ also determined that Dr. Le's opinion is inconsistent with evidence from the consultative examiner's evaluation of plaintiff. AR at 1100 (citing to Dr. Schoene's report). Dr. Schoene's physical examination revealed normal station and gait, normal range of motion of the lower and upper extremities without any evidence of muscle atrophy, spasm, inflamation, or tenderness. AR at 2807.

Plaintiff argues the ALJ was not permitted to simply adopt the opinion of a consultative examiner over that of a treating physician; however, that is not what happened here. Instead, the ALJ found Dr. Le's opinion to be "inconsistent with the grossly normal findings noted" during Dr. Schoene's examination of plaintiff. AR at 1110. In other words, it was Dr. Schoene's objective examination findings that the ALJ cited as inconsistent with Dr. Le's opinion, not Dr. Schoene's opinion. These objective findings were part of the record that, like Dr. Le's own examination findings, the ALJ found inconsistent with Dr. Le's opinion. As such, this was another specific and legitimate reason to discount Dr. Le's opinion.

In sum, the ALJ's gave two reasons for dismissing Dr. Le's opinion that were specific, legitimate, and supported by substantial evidence. Accordingly, the ALJ did not err in discounting Dr. Le's opinion.

### B. The ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff argues the ALJ improperly discounted her testimony regarding her pain symptoms and functional limitations. *See* P. Mem. at 9. Plaintiff argues the ALJ had to provide a specific, clear, and convincing reason to reject plaintiff's testimony. *See id.* at 9-12.

As an initial matter, the court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. SSR 16-3p rescinded and

superseded SSR 96-7p and applies to decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (internal quotation marks and alterations omitted).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at 1283-84 & n.8).  If the ALJ rejects the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 921, 929.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 1105.  At the second step, however, the ALJ discounted plaintiff's testimony about the intensity, persistence and limiting effects of plaintiff's symptoms. *Id*.  Because plaintiff cleared step one and there was no evidence of malingering, the ALJ's reasons for discounting plaintiff's symptom testimony had to be specific, clear, and convincing and supported by substantial evidence.

### 1.     **Inconsistency With Plaintiff's Own Previous Statements**

The ALJ first rejected plaintiff's testimony because it was inconsistent with her own previous statements regarding her daily activities.  AR at 1103.  First, the ALJ pointed to inconsistencies between plaintiff's testimony regarding her ability to perform daily activities with breaks, and her 2016 statement regarding the exercise routine she had initiated with her daughter.  *Id.*  As discussed above, the record does not reveal what the exercise involved, so whether this was an inconsistency is unclear.  In addition, the ALJ does not provide substantial evidence to support the conclusion that the limited activities plaintiff testified she engaged in, with the help of her mother and daughters, either comprised a "substantial" portion of plaintiff's day, or were "transferable" to a work environment. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (reasoning "[t]he ALJ must make 'specific findings relating to

[the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.") (citations omitted).

But the ALJ also pointed to plaintiff's reports in 2013 and 2016 that she did not drive due to leg cramping and numbness. AR at 302, 1103, 1434. Contrary to these reports, a 2016 emergency room record indicated plaintiff was involved in a car accident as a driver. AR at 1103, 1579. The ALJ properly found this constitutes an inconsistency between plaintiff's testimony regarding her daily activities permitted by her symptoms and her actual daily activities reflected in her treatment records. *See Tommasetti*, 533 F.3d at 1039 (ALJ may consider prior inconsistent statements concerning symptoms).

### 2. Inconsistency With the Medical Treatment Records

The ALJ further discounted plaintiff's testimony because it was inconsistent with the medical evidence in the record. AR at 1105. The ALJ cited treatment records that discussed plaintiff's physical examinations which revealed "mild tenderness to palpation at the finger, wrists, elbows and ankles, no proximal muscle weakness," "moderate soft tissue swelling of the right knee, no proximate muscle weakness," and "moderate tenderness to palpation of the fingers and wrists, limited range of motion of the cervical spine and mild soft tissue swelling at the ankles with no proximal muscle weakness." *See, e.g.,* AR at 1105-1108. The ALJ noted that plaintiff reported constant pain to hands, shoulders, neck, feet as well as related flare ups with increased joint pain throughout her body. *See, e.g.,* AR at 1107. The ALJ pointed to several portions of the treatment records that indicate plaintiff was experiencing improvements such as reduced pain and joint stiffness, improved energy after medication, and was frequently noted as having eleven to fourteen out of eighteen positive tender points. *See, e.g.,* AR at 1104, 1108. As noted above, these observations of improvement do not necessarily contradict plaintiff's testimony regarding her pain symptoms and functional limitations. But the records

the ALJ cited of only mild or moderate findings do undercut the severity of plaintiff's alleged symptoms.

The ALJ also pointed to specific instances in which plaintiff's reported complaints to her treating physician were not supported by examinations conducted the same day, which reflected mild or normal findings. AR at 1103-04; *see* AR at 1684-89, 1693-1704. The ALJ additionally cited treatment records reflecting no to minimal numbness, weakness, or cramping – either as reported by plaintiff or found in physical examinations – and found those inconsistent with plaintiff's claims of weakness, numbness, and cramping in Function Reports. AR at 1104; *compare* AR at 299, 304, 1431, 1434-36, *with* AR at 601-84, 1674-1707.

These inconsistencies between plaintiff's symptom testimony and what is reflected in the medical records are supported by substantial evidence. When considered with the inconsistency in plaintiff's testimony regarding her ability to drive, discussed above, these constitute clear and convincing reasons to discount plaintiff's testimony. The ALJ noted he did not disregard her testimony entirely, but rather considered her allegations of pain in his RFC determination. AR at 1104. But the ALJ did discount her testimony as to the limiting effects of her symptoms. AR at 1105. Because he gave clear and convincing reasons to do so, he did not err.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: September 29, 2021

SHERI PYM
United States Magistrate Judge